Jeffry A. Davis (SBN 103299)
Joseph R. Dunn (SBN 238069)
Abigail V. O'Brient (SBN 265704)
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Tel: 858 314-1500
Fax: 858 314-1501

Proposed Attorneys for Debtor in Possession
Los Gatos Hotel Corporation

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>LOS GATOS HOTEL CORPORATION,<br><br>             Debtor in Possession. | Case No. 10-63135<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S (1) EMERGENCY FIRST DAY MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND SETTING FINAL HEARING ON CASH COLLATERAL MOTION AND (2) MOTION FOR FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL**<br><br>Preliminary Hearing<br>Date: January 3, 2011<br>Time: 2:30 p.m.<br><br>Final Hearing<br>Date: TBD<br>Time: TBD<br><br>Judge: Arthur S. Weissbrodt |

# TABLE OF CONTENTS

I. SUMMARY OF MOTION AND NEED FOR EMERGENCY RELIEF ................................. 1

II. STATEMENT OF FACTS ................................................................................................ 2

    A. General Description of the Debtor. ....................................................................... 2

    B. Debt Structure. ....................................................................................................... 2

    C. Events Precipitating the Debtor's Chapter 11 Case. .............................................. 3

    D. Outlook for the Future ........................................................................................... 3

    E. The Debtor's Cash Needs and Proposed Adequate Protection for Lender ........... 4

III. JURISDICTION AND VENUE ....................................................................................... 4

IV. RELIEF REQUESTED ..................................................................................................... 4

V. ARGUMENT ..................................................................................................................... 5

    A. The Debtor Should Be Authorized to Use Cash Collateral Because Lender's Interest Is Adequately Protected. ............................................................................ 5

        1. Lender's Interest is Adequately Protected Because the Level of Cash Collateral Will Not Decline Through the Debtor's Postpetition Operations. ............................................................................................. 7

        2. Lender's Interest Is Adequately Protected by the Value of the Property. ................................................................................................... 8

    B. Section 552(b) Does Not Prevent the Debtor's Proposed Use of Cash Collateral. ............................................................................................................... 8

VI. NOTICE ............................................................................................................................ 10

VII. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*In re Center Wholesale, Inc.*,
  759 F.2d 1440 (9th Cir. 1985) ............................................................................................. 1

*In re Dynaco Corp.*,
  162 B.R. 389 (Bankr. D.N.H. 1993) ............................................................................. 7, 8, 9

*In re Las Vegas Monorail Co.*,
  429 B.R. 317 (Bankr. D. Nev. 2010) ............................................................................ 7, 11

*In re Ledgemere Land Corp.*,
  116 B.R. 338 (Bankr. D. Mass. 1990) ................................................................................ 8

*In re McCombs Props. VI, Ltd.*,
  88 B.R. 261 (Bankr. C.D. Cal. 1988) ............................................................................. 6, 8

*In re McCormick*,
  354 B.R. 246 (Bankr. C.D. Ill. 2006) .................................................................................. 6

*In re McGowan*,
  6 B.R. 241 (Bankr. E.D. Pa. 1980) ..................................................................................... 9

*In re Oak Glen R-Vee*,
  8 B.R. 213 (Bankr. C.D. Cal. 1981) ................................................................................... 7

*In re Pursuit Athletic Footwear, Inc.*,
  193 B.R. 713 (Bankr. D. Del. 1996) ................................................................................... 8

*In re Skagit Pacific Corp.*,
  316 B.R. 330 (B.A.P. 9th Cir. 2004) ................................................................................ 11

*In re Stein*,
  19 B.R. 458 (Bankr. E.D. Pa. 1982) ................................................................................... 8

*In re T-H New Orleans Ltd. P'ship*,
  10 F.3d 1099 (5th Cir. 1993) .............................................................................................. 9

*Pistole v. Mellor (In re Mellor)*,
  734 F.2d 1396 (9th Cir. 1984) ........................................................................................ 6, 9

*Security Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC)*,
  314 B.R. 436 (B.A.P. 9th Cir. 2004) .................................................................................. 7

**Statutes**

11 U.S.C. § 361 ............................................................................................................................ 7

11 U.S.C. § 361(2) ....................................................................................................................... 7

11 U.S.C. § 363(a) ....................................................................................................................... 6

11 U.S.C. § 363(c)(1) ................................................................................................................... 6

| | | |
|---|---|---|
|1| 11 U.S.C. § 363(c)(3) | 1 |
|2| 11 U.S.C. § 363(e) | 6 |
|3| 11 U.S.C. § 552(a) | 8 |
|4| 11 U.S.C. § 552(b) | 9 |
|5| 11 U.S.C. § 552(b)(2) | 8 |
|6| 27 U.S.C. §§ 157 and 1334 | 4 |
|7| 28 U.S.C. § 157(b)(2)(M) | 4 |
|8| 28 U.S.C. §§ 1408 and 1409 | 4 |

**Legislative History**

| | | |
|---|---|---|
| H. Rep. No. 109-31 (2005) | | 8, 9 |

**Rules**

| | | |
|---|---|---|
| Federal Rule of Bankruptcy Procedure 4001(b)(2) | | 5 |

Los Gatos Hotel Corporation, debtor and debtor in possession in the above-captioned case (the "Debtor"), submits this memorandum of points and authorities in support of its (1) emergency first day motion for interim order authorizing use of cash collateral and setting final hearing on cash collateral motion and (2) motion for final order authorizing use of cash collateral (the "Motion")

## I.

## SUMMARY OF MOTION AND NEED FOR EMERGENCY RELIEF

The Debtor is the owner of Hotel Los Gatos (the "Hotel"), a 72-room boutique hotel located in downtown Los Gatos that also contains a spa and restaurant. Substantially all of the Debtor's assets secure a $12 million loan purportedly held by GCCFC 2006-GG7 Los Gatos Lodging Limited Partnership ("Lender"). In order to serve the needs of its guests, the Hotel requires the use of cash collateral to pay day-to-day operating expenses, such as staff salaries.

The Motion is filed on an emergency basis because the Hotel's business will be severely harmed if the Debtor does not have immediate authorization to use cash collateral. The hotel business is very competitive and one of the most important variables that guests consider when choosing a hotel is the quality of service. Unless the Debtor obtains immediate authorization to use Lender's cash collateral to pay all ordinary and necessary expenses, the operations of the Hotel, and the Hotel's reputation for providing high-quality service, will be adversely impacted. As a result, occupancy levels will almost certainly decline, reducing revenues and the value of the estate's assets. In contrast, if the relief requested in the Motion is granted immediately, the value of the Debtor's assets will be preserved.

Moreover, granting emergency relief is consistent with the language of section 363, which provides that cash collateral hearings "shall be scheduled in accordance with the needs of the debtor." 11 U.S.C. § 363(c)(3). Accordingly, courts have recognized that emergency authorization to use cash collateral may be necessary immediately after a case is filed. *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1444 (9th Cir. 1985) ("We realize that 'in certain circumstances the entire reorganization effort may be thwarted if emergency relief is withheld' and that reorganization under the Bankruptcy Code 'is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund essential business operations' . . . It is

for this very reason that Congress specified that hearings concerning the use of cash collateral 'shall be scheduled in accordance with the needs of the debtor.'"). Therefore, in light of the Debtor's urgent need to use cash collateral to continue operating the Hotel for the benefit of all creditors, interim relief should be granted on an emergency basis.

## II.

## STATEMENT OF FACTS

### A. General Description of the Debtor.

Los Gatos Hotel Corporation, a California corporation (the "Debtor"), was formed in 2000 to build and operate Hotel Los Gatos (the "Hotel"), a full-service boutique hotel located in downtown Los Gatos, California. The Hotel, constructed in 2002, offers 72 guest rooms, over 2,000 square feet of meeting and conference space, a Michelin star restaurant, and a 3,600 square foot spa and fitness facility. The Debtor, through Folio Hospitality Management, operates all aspects of the Hotel except for the restaurant, which is owned and operated by a third party under a lease of the restaurant space from the Debtor.

### B. Debt Structure.

In 2006, the Debtor refinanced its debt on the Hotel through a loan (the "Loan") from Greenwich Capital Financial Products, Inc., which was evidenced by a promissory note in the amount of $12,000,000, payable over a period of five (5) years, and coming due in full in March 2011. The Debtor is informed, but has not confirmed, that the Loan was subsequently bundled with other loans and sold as part of a commercial mortgage-backed security to Greenwich Capital Commercial Funding Corp. GCCFC 2006-GG7 Los Gatos Lodging Limited Partnership ("Lender") claims that it currently holds the Loan, which is serviced by LNR Partners, LLC ("LNR"). Bank of America, NA acts as trustee for the registered holders of the Loan. As of the petition date, the principal balance of the Loan had been reduced to $11,606,981. In addition, LNR has claimed that penalties and interest in arrears total approximately $1,500,000. The Loan is allegedly secured by substantially all of the Debtor's assets, including the real property on which the Hotel operates (the "Real Property").

### C. Events Precipitating the Debtor's Chapter 11 Case.

From its inception in 2002, the Hotel thrived and was quickly established as one of the premier hotels in the greater Los Gatos area. However, in 2008, after six years of successful operations, the Hotel's revenues declined precipitously due to the national economic crisis, and in particular the collapse of the real estate and credit markets in 2008. In fact, the Hotel's revenues declined by approximately 30% between 2007 and 2009, from $5.2 million to $3.6 million. As operating losses mounted, the Debtor's shareholders injected cash to service the Loan and to meet operating expense obligations. This additional capital, however, proved insufficient to meet the Hotel's cash flow requirements.

In September 2009, the Debtor requested that LNR grant a temporary modification of its Loan. The Debtor did not receive a response until July 29, 2010, when LNR provided the Debtor with a draft forbearance agreement. Although the Debtor promptly provided feedback on the forbearance agreement and responded to LNR's inquiries, the Debtor was met with a general lack of responsiveness and the forbearance agreement was never executed. Instead, LNR filed a Notice of Default and scheduled a trustee's sale of the Real Property for December 7, 2010. That sale has since been rescheduled for January 31, 2011. Due in large part to the impending foreclosure, the Debtor commenced this chapter 11 case to protect the value of its assets for the Debtor's creditors and equity holders.

### D. Outlook for the Future

The Debtor's financial and operating performance has improved dramatically in the last year and the Hotel has both increased revenues and decreased expenses since May 2010. The Debtor believes revenues in 2011 will exceed $4.4 million and generate gross operating income sufficient to pay all operating expenses. In addition, Lender holds cash reserves under the Loan (which are property of the estate) of more than $732,000 for future property taxes, commercial insurance, and capital expenditures. Based on its recent and projected financial performance, the Debtor has formulated a strategic plan which will pay creditors in full and preserve the value of the Hotel for the Debtor's equity holders.

-3-
Case: 10-63135    Doc# 12    Filed: 12/29/10    Entered: 12/29/10 17:01:53    Page 7 of 14

### E. The Debtor's Cash Needs and Proposed Adequate Protection for Lender

The budget attached as **Exhibit 1** (the "Budget") to the Declaration of Jeff Curran in Support of the Motion projects the Debtor's cash needs over the next thirteen weeks. This projection was developed by the Debtor's management and financial advisor based upon current operating data and management's best estimate of future cash needs. The Debtor's recent operating results and future projections indicate that this trend will continue and that the Debtor's 2011 revenue will exceed $4,400,000—enough to pay all operating expenses and debt service while generating significant income. Accordingly, Lender's cash collateral will not be depleted through continued operations, and instead will increase in value through the Debtor's postpetition operations. As additional adequate protection, Lender will receive a lien on postpetition cash, accounts receivable and certain revenues. Moreover, an equity cushion exists, which provides additional adequate protection.

## III.
## JURISDICTION AND VENUE

The Court has jurisdiction to consider and determine the Motion pursuant to 27 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M). Venue before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV.
## RELIEF REQUESTED

The Debtor requests that the Court enter:

1. An interim order, on an emergency basis:

    (a) Authorizing the Debtor to use any and all revenue, including any cash collateral, now on hand or hereafter collected, in accordance with the Budget, pending the final hearing on the Motion;

    (b) Authorizing the Debtor to use cash collateral to make expenditures in amounts not to exceed 110% of the aggregate amounts contained in the Budget. Any expenditures in excess of that amount of cash collateral will require the written approval of Lender or further Court order;

    (c) Pending a final hearing on the Motion, granting Lender a replacement lien on the Debtor's post-petition cash, accounts receivable and revenues, to the same extent, validity and

priority as any lien on cash collateral held by Lender as of the petition date, to the extent of any diminishment in the value of Lender's collateral as a result of cash collateral used by the Debtor, including cash collateral used prior to the preliminary hearing on the Motion;

  (d) Setting a final hearing on the Motion not earlier than fourteen days after service of the Motion, as provided by Federal Rule of Bankruptcy Procedure 4001(b)(2); and

  (e) Granting such further relief as the Court deems just and proper.

 2. A final order:

  (a) Authorizing the Debtor to use any and all revenue, including any cash collateral, now on hand or hereafter collected, in accordance with the Budget;

  (b) Authorizing the Debtor to use cash collateral to make expenditures in amounts not to exceed 110% of the aggregate amounts contained in the Budget. Any expenditures in excess of that amount of cash collateral will require the written approval of Lender or further Court order;

  (c) Granting Lender a replacement lien on the Debtor's post-petition cash, accounts receivable and revenues, to the same extent, validity and priority as any lien on cash collateral held by Lender as of the petition date, to the extent of any diminishment in the value of Lender's collateral as a result of cash collateral used by the Debtor, including cash collateral used prior to the preliminary hearing on this Motion; and

  (d) Granting such further relief as the Court deems just and proper.

## V.

## ARGUMENT

**A. The Debtor Should Be Authorized to Use Cash Collateral Because Lender's Interest Is Adequately Protected.**

The Debtor's use of property of the estate is governed by section 363 of the Bankruptcy Code, which provides in pertinent part:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice of a hearing.

11 U.S.C. § 363(c)(1).

Pursuant to section 363(c)(2), the Court may authorize the Debtor's use of cash collateral as long as the affected secured creditor consents or is adequately protected. *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th Cir. 1984); *see also In re McCormick*, 354 B.R. 246, 251 (Bankr. C.D. Ill. 2006); *In re McCombs Props. VI, Ltd.*, 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988). "Cash collateral" is defined as

> cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

It is well settled that it is appropriate for a chapter 11 debtor to use cash collateral to maintain its property and operate its business. *In re Oak Glen R-Vee*, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981); *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993). Where the debtor is operating a business, it is extremely important that access to cash collateral be allowed in order to facilitate the goal of reorganization. *In re Dynaco Corp.*, 162 B.R. at 394 ("the purpose of chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business.").

Use of cash collateral requires either (1) the consent of the secured creditor, or (2) a determination by the court that the creditor is adequately protected. 11 U.S.C. § 363(e). When authorizing cash collateral use and determining adequate protection, the court must balance the "inherent tension between a debtor's need to use its cash to continue operating and a secured creditor's right to preserve its security interest in the debtor's cash proceeds." *In re Las Vegas Monorail Co.*, 429 B.R. 317, 326 (Bankr. D. Nev. 2010), quoting *Security Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC)*, 314 B.R. 436, 441 (B.A.P. 9th Cir. 2004). Adequate protection may be provided by periodic cash payments to the secured creditor, an additional lien in

favor of the secured creditor, or another form of protection that provides the secured party with the "indubitable equivalent" of its interest in the collateral. 11 U.S.C. § 361.

1. **Lender's Interest is Adequately Protected Because the Level of Cash Collateral Will Not Decline Through the Debtor's Postpetition Operations.**

Where, as here, the secured party's lien is on revenues generated by the property, the appropriate adequate protection "is a showing that the *level* of such a fluctuating base of items of collateral that are constantly cycling through different shapes and forms, as the business operation continues, will in fact remain at the same level . . . " *In re Dynaco*, 162 B.R. at 394; *see also In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990) (if receivables collected and used by the debtor are replaced by sufficient new receivables in which the creditor is granted a security interest, the creditor is adequately protected). Therefore, the preservation of the value of a secured creditor's lien provides sufficient adequate protection.

This is especially true where the Debtor's use of cash collateral will enhance the value of the collateral. *In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982). For example, in *In re McCombs Properties VI, Ltd.*, 88 B.R. 261 (C.D. Cal. 1988), the court determined that the debtor's use of cash collateral for operating expenses and repairs was appropriate because it was likely to increase the value of the cash collateral. 88 B.R. at 267; *see also In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) ("if there is no actual diminution of the value of collateral through the date of the hearing, and [Debtor] can operate profitably post-petition, [creditor] is adequately protected for the use of its cash collateral.").

Here, as shown in the Budget, the Debtor's postpetition operations will enhance the value of the cash collateral because its earnings will exceed operating costs. *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. at 716. As a result, the value of Lender's lien will, at a minimum, remain the same. *See In re Dynaco*, 162 B.R. at 394. Therefore, Lender is adequately protected. As further adequate protection, the Debtor proposes to grant Lender a lien on postpetition cash, accounts receivable and revenues. 11 U.S.C. § 361(2). Accordingly, the Court should authorize the Debtor's use of Lender's cash collateral.

## 2. Lender's Interest Is Adequately Protected by the Value of the Property.

Adequate protection may also be provided through the "indubitable equivalent" of the secured creditor's interest in property. One such indubitable equivalent is a substantial equity cushion, which can obviate the need for any other adequate protection. *In re Mellor*, 734 F.2d 1396 (9th Cir. 1984). Courts have found an equity cushion of 10% provides sufficient adequate protection. *See, e.g., In re McGowan*, 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980). The Debtor estimates that the value of the Hotel is $14,475,760—well in excess of the balance due on the Loan, $11,606,981. In addition, the Lender holds reserves of $732,000, which are property of the estate. Thus, Lender is protected by an equity cushion of approximately 30%.

This significant equity cushion, coupled with the lien on postpetition cash, accounts receivable and revenues and the increase in the value of cash collateral through postpetition operations provides ample adequate protection. Accordingly, the Court should authorize the Debtor to use Lender's cash collateral.

## B. Section 552(b) Does Not Prevent the Debtor's Proposed Use of Cash Collateral.

As a general rule, property acquired by the debtor postpetition is not subject to a lien created by a security agreement before the bankruptcy case was commenced. 11 U.S.C. § 552(a); *In re T-H New Orleans Ltd. P'ship*, 10 F.3d 1099, 1104 (5th Cir. 1993). However, an exception exists for hotel revenues:

> Except as provided in sections 363 . . . of this title . . . if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before commencement of the case and to amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties, then such security interest extends to such rents and such fees, charges, accounts, or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement, except as to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(2). Although a secured creditor's lien extends to postpetition hotel revenues, the legislative history emphasizes several important limitations on this lien. First, "the reference to section 363 permits use of pledged revenues if adequate protection is provided . . . " H. REP. NO.

109-31, at 142 (2005). Second, "[a] critical limit is the 'equities of the case' provision . . . which is designed . . . to give the courts broad discretion to balance the protection of secured creditors . . . against the strong public policies favoring continuation of jobs, preservation of going concern values and rehabilitation of distressed debtors . . . ." *Id.*

As discussed above, Lender is adequately protected by the equity cushion, the replacement lien and the positive cash flow from the Debtor's postpetition operations. Therefore, the Court should authorize the Debtor to use cash collateral. In addition, the equities of the case favor permitting the Debtor to use cash collateral. *See* 11 U.S.C. § 552(b). If the Debtor is not permitted to use cash collateral, hotel operations would cease and many jobs would be lost. *See* H. REP. NO. 109-31, at 142 (2005) (public policy of job preservation favors allowing debtors to use cash collateral). Moreover, without authorization to use cash collateral, the Debtor's business will be severely harmed because the Debtor will not be able to operate and the Hotel's value as a going concern would be lost.

Furthermore, despite the provisions of section 552(b), not all of the Debtor's postpetition revenues are subject to a lien created by the security agreement with Lender. Instead, postpetition revenues should be allocated between revenues based on the contributions of the collateral, which constitute cash collateral, and revenues from the labor of the debtor, which do not constitute cash collateral. *In re Las Vegas Monorail Co.*, 429 B.R. at 344-45.

Therefore, only post-petition revenues generated from occupancy charges, to the extent that they were subject to Lender's prepetition lien, constitute cash collateral. However, revenues generated from services are generally not cash collateral. *Id.; see also In re Skagit Pacific Corp.*, 316 B.R. 330, 336 (B.A.P. 9th Cir. 2004) ("any portion of the [accounts receivable] attributable to the Debtor's services . . . would not be considered proceeds under § 552(b). And what is produced by the debtor's added value by its labor (or the value added by others' labor) throughout the process of the reorganization effort will likewise not be subject to a creditor's pre-petition interest."). Accordingly, the Debtor may use the funds generated from postpetition services without restriction in the ordinary course of business because Lender's lien does not extend to these revenues.

## VI.
## NOTICE

The Motion and the supporting papers will be served, by email, facsimile or overnight mail, on (1) the United States Trustee for the Northern District of California, (2) the Debtor's twenty largest unsecured, non-insider creditors, and (3) counsel for Lender. Notice of the final hearing on the Motion will be provided to the parties listed above by first class mail.

Given the emergency nature of the relief requested by the Motion, and the potential harm that would be suffered if the Debtor does not obtain immediate relief, the Debtor submits that no further notice need be given.

## VII.
## CONCLUSION

WHEREFORE, the Debtor requests that the Court enter an interim order, on an emergency basis, and a final order granting the relief requested in the Motion.

DATED: December 29, 2010        /s/ Jeffry A. Davis
                                Jeffry A. Davis
                                Joseph R. Dunn
                                Abigail V. O'Brient
                                Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.

                                Proposed Attorneys for Debtor in Possession
                                Los Gatos Hotel Corporation